## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 05-1763 (RBW) |
| v. | ) ) | |
| COMPLETE PAINTING SERVICE CO, LLC a/k/a Complete Painting Service Company a/k/a Complete Painting Service Co., *et al.* | ) ) ) ) | |
| Defendants | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT BY DEFAULT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 55(b) AGAINST DEFENDANTS.

Plaintiff, the International Painters and Allied Trades Union Industry Pension Fund ("Pension Fund" or "Plaintiff"), by its legal counsel, submits this Memorandum of Law in Support of its Motion for Judgment by Default.[1]

The Plaintiff served its Complaint on Defendants, Complete Painting Service Co., LLC a/k/a Complete Painting Service Company a/k/a Complete Painting Service Co. ("Company") and Michael Liquindoli ("Liquindoli" and together with Company, "Defendants"), on September 26, 2006 and served the Amended Complaint on December 30, 2005. To date, Defendants have failed to answer the Complaints or otherwise defend this action. On June 1, 2006, Plaintiff filed a Request For Entry of Default against Defendants pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. The default was entered against all defendants on or about June 1, 2006.

In light of Defendants' default and Defendants' continuing failure to appear or otherwise

---

[1]    Attached to the Motion accompanying this Memorandum are the Declarations of Thomas Montemore ("Montemore Declaration") and Sanford G. Rosenthal ("Rosenthal Declaration"). Also attached is a proposed form of Default Judgment.

defend, the Pension Fund is entitled to judgment by default against Defendants without a hearing. Fed. R. Civ. P. 55(b); United States v. De Frantz, 708 F. 2d 310 (7th Cir. 1983); Draisner v. Liss Realty, 211 F. 2d 808 (1954). Moreover, where defendants, such as those here, fail to respond to the Complaint and Amended Complaint, all factual allegations in the Complaint and Amended Complaint are deemed admitted. Thomson v. Wooster, 114 U.S. 104 (1885); Au Bon Pain Corp. v. Artect, Inc., 653 F 2d 61 (2d Cir. 1981); U.S. ex. Rel. v. Carr, 567 F. Supp. 831, 840 (W.D. MI 1983). General allegations of fact are also deemed true. Danning v. Lavin, 572 F. 2d 1386, 1388-89 (9th Cir. 1978) (allegations of insolvency pled in general terms held sufficient to support a finding of fraudulent conveyance or voidable preference).

Company is and has been party to collective bargaining agreements (singly or jointly "Labor Contract") with the various local unions and district councils affiliated with the International Union of Painters and Allied Trades, AFL-CIO-CFC ("International" or "Union"). See, Exhibit 1, Montemore Declaration, ¶5; Exhibit 2, a true and correct copy of relevant provisions from the Labor Contract. Under the Labor Contract, Company is required to remit fringe benefit contributions and other sums to Plaintiff. See, Exhibit 1, Montemore Declaration, ¶6; Exhibit 2, Labor Contract, at Art. XV, Sec. 3. The failure to pay these fringe benefit contributions and other amounts results in a delinquency to the Plaintiff.

## ARGUMENT

A.    **ENTRY OF JUDGMENT AGAINST DEFENDANTS, JOINTLY AND SEVERALLY, FOR UNPAID CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES AND ATTORNEYS' FEES AND COSTS IS ENTIRELY APPROPRIATE**

1.    **Company is Bound by the Terms and Conditions of a Collective Bargaining Agreement with the Union.**

Company is a party to a Labor Contract with the Union. See, Exhibit 1, Montemore Declaration, ¶5; Exhibit 2, Labor Contract. The Labor Contract provides for the payment of contributions to the Pension Fund for time worked by or paid to employees who perform work covered by its terms and conditions. See, Exhibit 1, Montemore Declaration, ¶6; Exhibit 2, Labor Contract, at Art. XV, Sec. 3. Failure to make these contributions, or to submit either incorrect or late remittance reports, results in a delinquency to the Pension Fund. Ibid. Under the Labor Contract, the Pension Fund also has the right to audit the signatory's payroll books and related records to determine that all of the required contributions have been paid. See, Exhibit 1, Montemore Declaration, ¶¶5, 13; Exhibit 2, Labor Contract, at Art. XV, Sec. 3; Complaint, Exh. 1, Art. VI, Sec. 6; Amended Complaint Exh. 1, Art. VI, Sec. 6. Finally, under the terms of the Labor Contract, the employer agrees to be bound by the Agreement and Declaration of Trust of the Pension Fund ("Trust Agreement," attached as Exhibit 1 to the Complaint and Amended Complaint filed in this matter and incorporated by reference) and the International Painters and Allied Trades Industry Pension Plan ("Plan," attached as Exhibit 2 to the Complaint and Amended Complaint filed in this matter and incorporated by reference) and by all amendments thereto and actions taken by the trustees of the Pension Fund. See, Amended Complaint, ¶¶ 5-7; Exhibit 1, Montemore Declaration, ¶¶ 5, 6; Exhibit 2, Labor Contract, at Art. XV, Sec. 3.

Furthermore, Section 515 of the Employee Retirement Income Security Act ("ERISA"),

29 U.S.C. §1145, provides:

> Every Employer who is obligated to make contributions to a
> bargained agreement shall ... make contributions in accordance
> with ... such agreement.

If an employer fails to make the contributions as required by the collective bargaining

agreement and Section 515 of ERISA, then the employer is subject to the provisions of Section

502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2). Section 502(g)(2) provides for the mandatory

award of the following if a judgment is entered in the Pension Fund's favor pursuant to Section

515:

    A.    the unpaid contributions;

    B.    interest on the unpaid contributions;[2]

    C.    an amount equal to the greater of:

        (i)    interest on the unpaid contributions; or

        (ii)    liquidated damages provided for under the plan in an
            amount not in excess of 20 percent (or such higher
            percentage as may be permitted under Federal or State law)
            of the amount determined by the Court under subparagraph
            (a);[3]

    D.    reasonable attorneys' fees and costs of the action, to be paid by the
        Defendants; and

    E.    such other legal or equitable relief as the court deems appropriate.

---

[2]    Section 10.12(b)(2) of the Plan sets the interest rate on delinquent contributions according to the Internal Revenue Service rate for delinquent taxes. See, Complaint and Amended Complaint, Exhibit 2.

[3]    ERISA and §10.12(b)(3) of the Plan's rules and regulations mandate that liquidated damages be awarded in an amount equal to the greater of interest or twenty percent (20%) of unpaid contributions due at the commencement of the lawsuit and those which become delinquent during the course of the litigation. See, Complaint and Amended Complaint, Exhibit 2. Article VI, Sec. 4 of the Trust Agreement also provides for the assessment of liquidated damages on contributions paid after the due date. See, Complaint and Amended Complaint, Exhibit 1.

As stated above, Company has failed to submit contributions and/or remittance reports for the period January 2002 through May 2006. See, Exhibit 1, Montemore Declaration, ¶8. As a result, Plaintiff is entitled to judgment in at least the amount of $68,660.41.

> **2.    Defendants each Breached a Fiduciary Duty to the Pension Fund and are, Therefore, Personally and Jointly and Severally Liable for All Amounts Due.**

ERISA imposes strict fiduciary duties on persons with control over assets of an employee benefit plan. If the documents governing the fund (i.e., the trust agreement) identify unpaid fringe benefit contributions as plan assets, then employees of a delinquent employer who exercise control or authority over the unpaid contributions breach a fiduciary duty to the fund and may be held personally liable for all amounts owed. See, ITPE Pension Fund v. Hall, 334 F.3d 1011 (11th Cir. 2003); Laborers Combined Pension Fund of W. Pa v. Parkins, 2002 U.S. Dist. LEXIS 20035 (W.D.Pa. 2002).

An individual is a fiduciary under ERISA if that person exercises control or authority over plan assets. 29 U.S.C. § 1002(21)(A)(i); Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 233 (3d Cir. 1994); Galgay v. Gangloff, 677 F. Supp. 296, 300-01 (M.D.Pa. 1987), aff'd., 932 F.2d 959 (3rd Cir. 1991); Southern Elec. Health Fund v. Kelley, 308 F.Supp.2d 847 (M.D. Tenn. 2003); Teamsters Health & Welfare Fund of Phila. & Vicinity v. World Trans., Inc., 241 F.Supp.2d 499, 505 (E.D. Pa. 2003); PMTA-ILA Containerization Fund v. Rose, No. 94-5635, 1995 WL 461269, *4 (E.D.Pa. Aug. 2, 1995); Blatt v. Marshall, 812 F.2d 810, 812 (2d Cir. 1987); In re Philpott, 281 B.R. 271, 282 (W.D. Ark 2002); NYSA-ILSA Med. & Clinical Serv. Fund v. Catucci, 60 F.Supp.2d 194, 200 (S.D.N.Y. 1999); Connors v. Paybra Mining Co., 807 F. Supp. 1242, 1245 (S.D.W.V. 1992); Laborers Combined Funds of W. Pa. v. Cioppa, 2004 WL 2563860, *3, (W.D. Pa. April 6, 2004).

a.    **All Contributions, Paid _and_ Unpaid, are Plan Assets.**

Since ERISA does not define the term "plan asset," the courts instead have looked to the

agreements creating the plan (i.e., the trust agreement and/or wage agreements) for guidance.

World Trans., Inc., 241 F.Supp.2d at 505 (citing Galgay); Trustees of the Nat'l Elevator Ind.

Pens., Health Benefit and Educ. Pension Fund v. Lutyk, 140 F.Supp.2d 407 (E.D.Pa., 2001);

Parkins, 2002 U.S. Dist. LEXIS 20035 at *6; In re Philpott, 281 B.R. at 282; Catucci, 60

F.Supp.2d at 200; Connors, 807 F. Supp. at 1246; Young v. West Coast Indus. Relations Assoc.,

Inc., 763 F. Supp. 64, 75 (D. Del. 1991); Cioppa, 2004 WL 2563860 at *4.

In concluding that unpaid contributions are plan assets, the courts have often keyed in on

certain buzzwords found in an employee benefit plan trust document. These courts have

concluded that words or phrases such as "payable," "due and owing," "as shall be paid," or

"accrued," when used in a trust document to describe employee benefit contributions, indicate

that unpaid contributions constitute plan assets. World Trans., Inc., 241 F.Supp.2d at 505-06

(holding that fringe benefit contributions are considered plan assets if under the trust agreement

title is created at the time the contributions are "payable" to the fund); Rose, 1995 WL 461269 at

*4 (holding that contributions are considered plan assets if the employee benefit plan trust

document grants title to these assets at the time they are "due and owing" or "accrued"); Parkins,

2002 U.S. Dist. LEXIS 20035 at *6 (acknowledging that language similar to "due and owing" is

sufficient to include unpaid contributions in the definition of plan assets); Hanley v. Giordano's

Restaurant, No. 94-4696, 1995 WL 442143, *4 (S.D.N.Y. Jul. 26, 1995) (any outstanding or

withheld contributions constituted plan assets at the time they were "due and owing"); Galgay,

677 F. Supp. at 301 (plan trust document with language defining plan assets as those which are

"due and owing" confirmed that unpaid contributions were indeed plan assets); Lutyk, 140

F.Supp.2d at 411(language in the trust agreement which provides that the employee benefit plan shall consist of money "as shall be paid," creates a presumption that contributions, once they become due and owing, are plan assets). By defining plan assets to include monies that are "payable," "due and owing," "as shall be paid," or "accrued," the trustees of an employee benefit plan assure that employer contributions become plan assets whether or not they are actually paid to the fund.[4]

The language contained in the Trust Agreement of the Pension Fund in this case is consistent with the foregoing and leaves no doubt that the unpaid contributions owed by the Company are plan assets at the time the bargaining unit work is performed and the obligation to make fringe benefit contributions initially arises. The Trust Agreement specifically defines "Employer Contributions" as follows:

> The term 'Employer Contributions shall mean payments made *or to be made* to the [Pension] Fund by a Contributing Employer under the provisions of, or in accordance with, a [Labor Contract] and the Trust Agreement, or with regard to a Local Union..."

See, Complaint and Amended Complaint, Exhibit 1, Art. 1, Sec. 10.

By including the words, "or to be made" in the definition of Employer Contributions, the Trust Agreement clearly passes muster under the plan asset jurisprudence espoused above. The

---

[4]    At least one court has also held that unpaid contributions are also considered plan assets on the date the employee benefit plan receives remittance reports from the employer. World Trans., Inc., 241 F.Supp.2d at 506. In the instant case, based upon the audit and the Pension Fund receiving remittance reports from the Company for the period January 2002 through December 2005 without corresponding contributions. Accordingly, notwithstanding the language in the Pension Fund Trust Agreement, the contributions owed on the remittance reports are plan assets.

language employed by the Pension Fund Trustees confirms that paid <u>and</u> unpaid contributions are plan assets, the latter becoming an asset of the Pension Fund at the time the obligation to make fringe benefit contributions accrue. In other words, at the same time that a signatory employer has employees that perform work covered by a collective bargaining agreement, the employer incurs an obligation to make fringe benefit contributions to the Pension Fund <u>and</u> at the very moment that this obligation arises, the fringe benefit contributions payable to the Pension Fund become plan assets.

Company, as a party to the Labor Contract, agreed to abide by the terms of the Trust Agreement. <u>See</u>, Complaint, ¶¶ 7-8; Amended Complaint ¶¶6-7; Exhibit 1, Declaration of Thomas Montemore, ¶¶5, 6; Exhibit 2, Labor Contract, at Art. XV, Sec. 3. Under the Trust Agreement, contributions, made or to be made (i.e., unpaid but due and owing as a result of the obligation to contribute under the Labor Contract), are plan assets. Consequently, unpaid contributions, paid or payable to the Plaintiff by Company are considered plan assets.

**b.    Defendants Exercised Control Over the Unpaid Contributions Due the Pension Fund**

Once it is determined that the unpaid contributions are plan assets, an individual -- be he corporate officer or otherwise -- may be held personally liable for a breach of fiduciary duty if he exercised authority or control over those plan assets and failed to act solely in the interests of the participants and beneficiaries of the employee benefit plan by failing to pay contributions into the plan. <u>Hall</u>, 334 F.3d at 1013; <u>Chicago Bd. of Options Exchange, Inc. v. Connecticut Gen'l Life Ins. Co.</u>, 713 F.2d 254, 259 (7th Cir. 1983); <u>Parkins</u>, 2002 U.S. Dist. LEXIS 20035 at *6; <u>Catucci</u>, 60 F.Supp.2d at 200; <u>Connors</u>, 807 F. Supp. at 1246; <u>Galgay</u>, 677 F. Supp. at 302 (M.D.Pa. 1987) (citing <u>Local Union 2134, United Mine Workers of America v. Powhatan Fuel, Inc.</u>, 640 F. Supp. 731, 735 (N.D.Ala. 1986)); 29 C.F.R. § 2509.75-8 (1986); <u>Rose</u>, 1995 WL

461269 at *4 (citing Curcio, 33 F.3d at 233); Cioppa, 2004 WL 2563860 at *4 (citing Curcio, 33 F.3d at 233).

In Rose, the court held that discretionary control over fringe benefit contributions designated for deposit with an ERISA fund is enough to demonstrate control over plan assets. Rose, 1995 WL 461269 at *5. In Rose, the individual defendant had decision making authority on how to distribute his company's revenues and royalties. Once the court determined that it was dealing with plan assets, the court found that the individual defendant had breached his fiduciary duty to the plaintiff pension fund by exercising control over the plan assets. Id, at *5-6.

Other courts have held that making a "personal, conscious choice" to withhold employee contributions shows the requisite control. Connors, 807 F. Supp. at 1244-46. Also indicative is a showing of broad personal discretion and control over the assets and spending practices of the corporation as well as command over when (or if) contributions are paid to an employee benefit plan. Ibid. See also, Parkins, 2002 U.S. Dist. LEXIS 20035 at *8-9 (person who was otherwise responsible for submitting fringe benefit contributions to the fund shown to have control over plan assets).

Still other courts have found that individuals with discretion to decide what bills would be paid or how to distribute revenues and royalties held the requisite "authority or control" to be considered fiduciaries. As the court in Catucci noted, once the corporation is indebted to the fund, the officer's allocation of any available monies to payment of any bills other than the contributions is a breach of fiduciary duty. Catucci, 60 F.Supp.2d at 203-204.

In the Amended Complaint in the instant matter, Plaintiff alleged several facts which are indistinguishable from the foregoing and indicate that the Liquindoli had the requisite control and authority over plan assets.

- As the principal officer and managing agent of the Company,[5] Liquindoli was and is responsible for collection of monies payable to the Pension Fund resulting from labor performed by Company's employees covered under the Labor Contract. <u>See</u>, Amended Complaint, ¶38.

- As the principal officer and managing agent of the Company, Liquindoli was and is responsible for submitting monthly remittance reports to the Pension Fund setting forth the total amount of fringe benefit contributions owed resulting from labor performed by his employees covered under the Labor Contract. <u>See</u>, Amended Complaint, ¶39.

- As the principal officer and managing agent of the Company, Liquindoli had and has the authority to make decisions as to what obligations and/or payments of Company are/were to be paid to the Pension Fund, including the authority to make payments for his own personal benefit, or to creditors of the Company. <u>See</u>, Amended Complaint, ¶40.

- At such time as fringe benefit contributions became due and payable by Company to the Pension Fund, such monies became trust assets and Liquindoli exercised authority or control with respect to his management or disposition. <u>See</u>, Amended Complaint, ¶41.

- Liquindoli, through his respective position, caused and directed Company to fail and refuse to forward to the Pension Fund the monies held in trust for payment to the Pension Fund pursuant to the Labor Contract, Trust Agreements and applicable law. <u>See</u>, Amended Complaint, ¶41.

As Defendants have not responded to each these allegations, all such factual assertions set forth by the Plaintiff in its Complaint and Amended Complaint must be taken as true. <u>Thomson</u>, <u>supra</u>, 114 U.S. at 109-112; <u>Au Bon Pain Corp.</u>, <u>supra</u>, 653 F.2d at 65; <u>Carr</u>, <u>supra</u>, 567 F. Supp. at 840; <u>Danning</u>, <u>supra</u>, 572 F.2d 1386, 1388-89.

---

[5]    <u>See also</u>, Exhibit 3, a true and correct copy of the Company's Operating Agreement listing Liquindoli as both officer and sole shareholder of the Company.

The facts in this case clearly demonstrate that Liquindoli is a fiduciary because each exercises(ed) discretionary control and authority over plan assets (i.e., the unpaid contributions) and that Liquindoli has breached a fiduciary duty to the Pension Fund by failing to remit the contributions to the Pension Fund at the time they became payable to the Pension Fund. Liquindoli was responsibility for submitting remittance reports and corresponding fringe benefit contributions to the Pension Fund. Liquindoli, through his position with the Company, willfully and intentionally caused and directed Company to fail and refuse to forward to the Pension Fund the monies held in trust for payment to the Pension Fund pursuant to the Labor Contract, Trust Agreement and applicable law. These monies were either paid to other creditors of the Company or were simply pocketed by the Liquindoli. Liquindoli, therefore, is personally liable for all fringe benefits contributions, interest, liquidated damages and attorneys' fees and costs owed by Company to the Pension Fund pursuant to the Labor Contract, Trust Agreement, Plan, and applicable law.

          **c.**      **Defendants owe fringe benefit contributions in the amount of $42,848.42**

Defendants have failed to submit the required contributions for the period January 2002 through May 2006. See, Exhibit 1, Montemore Declaration, ¶8. Based upon the audit report and remittance reports Defendants prepared and submitted for the period January 2002 through December 2005, the Pension Fund is owed at least $24,909.12 in unpaid contributions. See, Exhibit 1, Montemore Declaration, ¶8. Defendants also failed to submit the contractually-required remittance reports and contributions for the period January 2006 through May 2006. See Exhibit 1, Montemore Declaration, ¶8. During this period, the Pension Fund must estimate the amount of contributions owed by Defendants. Based on estimates prepared by the Pension Fund,

it is believed that Defendants owed $17,939.30 during the period January 2006 through May 2006. In sum, Defendants owe $42,848.42 in unpaid fringe benefit contributions.

### d.   Defendants owe interest in the amount of $2,188.24

The rules and regulations as set forth in §10.12(b)(2) of the Plan set the interest rate on delinquent contributions according to the Internal Revenue Service rate for delinquent taxes. Interest accruing through June 30, 2006 on Defendants' $42,848.42 in delinquent contributions totals $2,188.24. See, Exhibit 1, Montemore Declaration, ¶9; 29 U.S.C. §1132(g)(2)(B); 26 U.S.C. §6621. Interest will continue to accrue until the contributions are paid.

### e.   Defendants owe audit costs in the amount of $1,770.62.

The determination of an employee's eligibility for benefits is made based upon information contained on the remittance report. An employer's liability to the Pension Fund is also based on information contained in the report. When a remittance report is not submitted or contains incorrect information, then a proper determination of eligibility and amounts due to the Pension Fund is impossible. In such a case, the only means of obtaining the necessary information is to review the employer's payroll records. Central States, S.E. & S.W. Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 581 (1985).

Article VI, Section 6 of the Agreement and Declaration of Trust of the Pension Fund provides for recovery of audit costs in the event that an audit of a signatory employer's payroll books and related records reveals a delinquency to the Pension Fund. On March 1, 2006, the Pension Fund completed an audit of the Company's payroll books and related records covering the period January 1, 2002 through December 31, 2005. This audit revealed a consistent pattern of underpayments and non-payments of contributions to the Pension Fund. As a result, Company is responsible for the cost of the audit. The cost of the audit is $1,770.62. Montemore Declaration, ¶11.

**f.**         **Defendants owe late charges of $812.31**

ERISA and Section 10.12(b)(5) of the Pension Plan allow for other legal or equitable

relief as the Court deems appropriate.  Article VI, Sec. 4 of the Pension Fund's Agreement and

Declaration of Trust provides for "late charges" in the form of interest on contributions paid more

than twenty days after the due date and prior to litigation.  Defendant owes $812.31 in "late

charges/interest" as a result of its late payment of contributions each month from February 2004

through December 2004 and July 2005 through December 2005.   Montemore Declaration, ¶12. See

also, International Brotherhood of Painters and Allied Trades International Union and Industry

Pension Fund v. Claser Painting Corporation, No. 91-7185, slip. op. at *1-2 (D.C. Cir. Feb. 1, 1993).

**g.**         **Defendants owe liquidated damages in the amount of $13,215.04**

ERISA and §10.12(b)(3) of the Plan's rules and regulations mandate that liquidated

damages be awarded in an amount equal to the greater of interest or twenty percent (20%) of

unpaid contributions due at the commencement of the lawsuit and those which become

delinquent during the course of the litigation. Article VI, Sec. 4 of the Pension Fund's Trust

Agreement also provides for the assessment of liquidated damages on contributions paid after the

due date. The total amount of liquidated damages is $13,215.04 which is greater than the interest

due. Therefore, the amount of liquidated damages which Defendants owe is $13,215.04. See,

Exhibit 1, Montemore Declaration, ¶10; 29 U.S.C. §1132(g)(2)(C).

**h.**         **Defendants owe attorneys' fees in the amount of $7,825.78**

Plaintiff has incurred $7,825.78 in attorneys' fees and costs in connection with this matter

through June 27, 2006. See, Exhibit 3, Rosenthal Declaration, ¶3; Exhibit 4. See, 29 U.S.C.

§1132(g)(2). The Pension Fund is entitled to reimbursement of all attorneys' fees and costs it

incurs in connection with the enforcement and collection of any judgment entered by the Court.

See, International Painters and Allied Trades Industry Pension Fund v. H.W. Ellis Painting Co., Inc., No. 03-1125, slip. op. at *3 (D.D.C. February 10, 2004) (citing Free v. Briody, 793 F.2d 807 (7th Cir. 1986); Trucking Employees of North Jersey Welfare Fund, Inc. v. Bellezza Co., 57 Fed. Appx. 972 (3d Cir. 2003); Sheet Metal Workers Health and Welfare Trust Fund v. Big D Service Co., 867 F.2d 852 (10th Cir. 1989)).

### i.    The Pension Fund is entitled to injunctive relief

The failure of Company to comply with its contractual and statutory obligations results in a substantial adverse impact on the Pension Fund's ability to meet its legal obligations. The Pension Fund is obligated by express mandates of ERISA and by the documents and instruments by which it is administered to provide benefits and pension credits to all of Company's employees who are otherwise eligible to receive them. 29 C.F.R. 2530-200b-2(a)(1) and (2); Central States, S.E. & S.W. Areas Pension Fund v. Admiral Merchants Motor Freight, Inc., 511 F.Supp. 38 (D.Minn. 1980), aff'd sub. nom., Central States, S.E. & S.W. Areas Pension Fund v. Jack Cole-Dixie Highway Co., Inc., 642 F.2d 1122 (8th Cir. 1981). The Pension Fund is required to provide these benefits and credits regardless of whether Defendants make the contributions. For example, if employees perform work covered by the collective bargaining agreement, the Pension Fund has affirmative obligations to credit hours for retirement benefits regardless of whether a signatory employer makes contributions to the Pension Fund. The result of Company's non-compliance with ERISA and the Labor Contract is a significant drain on the Pension Fund's resources.

Additionally, where, as here, Defendants fail to remit their contributions, the Pension Fund loses the income that it would have earned by investing those contributions. Combining this loss of investment income with the Pension Fund's requirement to continue paying benefits

to Company's employees (as well as to the employees of other signatory contractors) will eventually affect the actuarial soundness of the Pension Fund as well as deplete the resources available to pay current pension benefits.

Furthermore, the Pension Fund incurs additional administrative expenses as a result of Defendants' failure to pay their contributions. These losses and added expenses significantly impair the Pension Fund's ability to continue to provide benefits to not only Company's employees, but also to employees of companies that comply with their contractual obligations.

In light of Defendants' failure to comply with their contractual and statutory obligations to the Pension Fund to submit timely, accurate remittance reports and pension contributions each month, and the irreparable harm which Defendants' malfeasance causes the Pension Fund, the Pension Fund respectfully requests the injunctive relief which is set forth in its proposed default judgment. Laborers' Fringe Benefit Funds v. Northwest Concrete, 640 F.2d 1350, 1352 (6th Cir. 1981); IBPAT Union and Industry Pension Fund v. Hartline-Thomas, Inc., 4 EBC 1199, 1200 (D.D.C. 1983); Teamsters Local 639 - Employers Trust v. Jones & Artis Construction Co., 640 F.Supp. 223 (D.D.C. 1986).

**B.    COMPANY SHOULD BE ORDERED TO PRODUCE THE APPROPRIATE RECORDS TO ALLOW THE PENSION FUND TO AUDIT ITS PAYROLL BOOKS AND RELATED RECORDS AND DEFFENDANTS MUST PAY ANY ADDITIONAL AMOUNTS FOUND TO BE DUE AND OWING**

The determination of an employee's eligibility for benefits is made based upon information contained in the remittance report, to be filed monthly by each and every signatory employer. A proper determination of eligibility is not possible if remittance reports are not submitted or if they contain incorrect information. See, 29 U.S.C. §1132(g)(2)(E) (equitable

relief); Teamsters Local 639 – Employers Trust v. Jones & Artis Construction Co., 640 F.

Supp.223 (D.D.C. 1986); IBPAT Union and Industry Pension Fund v. Hartline – Thomas, Inc., 4

EBC 1199, 1200 (D.D.C. 1983); Laborers' Fringe Benefit Pension Fund v. Northwest Concrete,

640 F. 2d 1350, 1352 (6th Cir. 1981).

      In order to determine whether the contributing employer has made all required

contributions and correctly reported hours worked and paid to its employees, the Pension Fund

has the right to review all of the employer's records that relate to its contributory obligation.

Central States, S.E. & S.W. Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 105

S.Ct. 2833 (1985). The employer has the obligation to maintain appropriate records and to permit

the Pension Fund's auditors to review those records upon request. Michigan Laborers' Health

Care Fund v. Grimaldi Concrete, Inc., 30 F.3d 692, 695 (6th Cir. 1994).

      In the present case, the Labor Contract and Trust Agreement obligate Defendants to allow

the audit. See Exhibit 1, Montemore Declaration, ¶¶5, 6, 13; Exhibit 2, Labor Contract, Art. XV,

Sec. 3; Complaint, Exhibit 1, Art. VI, Sec. 6; Amended Complaint, Exhibit 1, Art. VI, Sec. 6.

The scope of records subject to review is broad, and include those records the auditors

reasonably deem necessary to conduct an audit. DeMarco v. C & L Masonry, 891 F.2d 1236 (6th

Cir. 1989). See Exhibit 1, Montemore Declaration, at ¶13. In addition to the routine payroll

records (e.g., time cards, cancelled payroll checks, payroll ledgers and payroll tax returns), they

can include the general check registers and cancelled checks, general disbursements ledgers and

federal and state corporate income tax returns. Ibid.

      An audit is necessary in this case in order to determine the exact amount due to the

Pension Fund because of Defendants' failure to submit contractually-required remittance reports

and furthermore, to ensure that the remittance reports submitted by Defendants are correct. See

Exhibit 1, Montemore Declaration, at ¶¶5-7, 13. The Company's obligations under the Agreement and 29 U.S.C. § 1145 mean nothing if the Pension Fund cannot ensure compliance through an audit. The Court should order Company to produce its records for an audit for all periods in which the Defendants are obligated to make contributions to the Pension Fund so that a precise determination of the amount owed can be made. Upon completion of the audit, the Court should enter a further judgment against Defendants for all additional amounts found to be due and owing under the Agreement and ERISA.

### CONCLUSION

Plaintiff, therefore, requests that the Court enter a judgment against Defendants, jointly and severally, in the amount of $68,660.41, which includes $7,825.78 in attorneys' fees and costs, order Defendants to submit the remittance reports and corresponding contributions together with interest and liquidated damages for the period January 2002 through May 2006 and order Company to produce its payroll books and related records for an audit for all periods in which the Company is obligated to make fringe benefit contributions to the Pension Fund.

In light of the clear statutory intent of ERISA, it is respectfully requested that this Court grant the Pension Fund the relief requested in the Motion for Default Judgment.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

BY:/s/ Sanford G. Rosenthal
    SANFORD G. ROSENTHAL, ESQUIRE
    (I.D. NO. 478737)
    The Penn Mutual Towers, 16th Floor
    510 Walnut Street, Independence Square
    Philadelphia, PA 19106-3683
    (215) 351-0611
Date: June 28, 2006     Attorney for Plaintiff